FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 JUN 27 AM 10: 48

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JANICE CARRINGTON, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 01-BU-2421-S |
| | ) | |
| NATIONWIDE    MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
|    Defendant. | ) | |

ENTERED

JUN 27 2002

## Memorandum Opinion

In her sole remaining claims in the above-styled action,
Plaintiff Janice Carrington alleges that Defendant Nationwide
Mutual Insurance Company failed to promote her because of race,
sex, and age, in violation of Title VII of the Civil Rights Act of
1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42
U.S.C. § 1981 ("Section 1981"); and the Age Discrimination in
Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Now before the
Court is Defendant's motion for summary judgment, (Doc. 25), which
is accompanied by a supporting brief and an evidentiary submission.
Also before the Court are two motions filed by Plaintiff requesting
that the Court strike, "in whole or in part," affidavits sworn by
Jeffrey Robertson and Chad Emmerich, which are included in

37

Defendant's evidentiary submission.  <u>See</u> Doc's 28 & 29.  Upon consideration of the record evidence and the arguments of counsel, the Court concludes as follows:  Plaintiff's motion to strike Emmerich's affidavit (Doc. 29) is due to be **DENIED IN PART AND DENIED AS MOOT IN PART**; Plaintiff's motion to strike Robertson's Affidavit (Doc. 28) is due to **DENIED AS MOOT**[1]; and Defendant's motion for summary judgment (Doc. 25) is due to be **GRANTED**.

### I.  SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A party seeking summary judgment has the initial responsibility of informing the Court of

---

[1]Plaintiff has moved to strike Robertson's affidavit on the ground that Defendant failed to disclose Robertson as a potential witness, pursuant to Fed. R. Civ. P. 26(a)(1). However, the Court concludes that Defendant is entitled to summary judgment regardless of whether Robertson's affidavit is considered. Therefore, Plaintiff's motion to strike Robertson's affidavit shall be denied as moot.

the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, at 323. This implies that the movant must direct the court to materials in the record that either negate an element of the non-moving party's claim or demonstrate that the non-movant will not be able to meet its burden of proof at trial; it is never enough for the movant simply to state that the non-moving party cannot meet its burden at trial. <u>Mullins v. Crowell</u>, 228 F.3d 1305, 1313-14 (11th Cir. 2001); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, however, the nonmoving party must point to evidence in the record indicating that there is a genuine issue of fact for trial, <u>i.e.</u>, there must be sufficient evidence to allow a factfinder reasonably to return a verdict in the nonmovant's favor. <u>See Liberty Lobby</u>, 477 U.S. at 248, 252. In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. <u>Rooney v. Watson</u>, 101 F.3d 1378, 1380 (11th Cir. 1996) (<u>citing</u> <u>Hale v. Tallapoosa Co.</u>, 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well

as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 151 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299). Keeping these standards in mind, the Court turns to the record in this case.

## II.  BACKGROUND[2]

Plaintiff Janice Carrington is a black woman, born October 10, 1954.  She began her employment in the insurance industry in 1977, upon obtaining a degree in Business Management from California State University.  After working for various other insurance companies, Plaintiff became employed as a Claims Supervisor for Wausau, a California-based division of Defendant.  She states that while in that job, she supervised two individuals, although she acknowledges that she was not responsible for hiring or firing these employees nor for completing evaluations regarding their performance.  In 1986, Plaintiff left her employment to receive religious training, and from 1988 to 1992, she ministered with her

---

[2]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only.  They may not be the actual facts.  See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

husband.

In November 1993, Plaintiff returned to work for Defendant as a Senior Claims Representative at its Birmingham, Alabama office. As a claims representative, Plaintiff was assigned cases in which an insurance claim had been filed, and then she would then attempt to resolve the claim, through investigation, contacting customers or claimants, determining policy coverage, and monitoring payments. In 1996, Plaintiff was promoted to a Master Claims Representative position.  In that post, she worked strictly on bodily injury claims, but her duties otherwise remained basically the same. Plaintiff's annual performance evaluations from 1995 to 1999 completed by her respective supervisors during those years show that she was most often rated as a sound employee who, on the whole, consistently met all the requirements of her job and her employer's expectations, but who overall did not exceed those requirements or expectations.  However, one evaluation covering the 1998 workyear shows that Plaintiff was rated as an employee who not only "satisfies all requirements" of her job but also actually "exceed[ed] some requirements."

On November 16, 2000, a Claims Manager position in Defendant's Birmingham office became available.  A job posting published by Defendant states that the following were "Job Requirements" for a Claims Manager position:

Education:   Undergraduate degree and insurance related course studies preferred.

Experience: Five years insurance industry experience, including a minimum of 2 years management experience with undergraduate degree.  In lieu of undergraduate degree, 10 years insurance industry experience with 2 years management experience.

Knowledge:
* Basic knowledge of information systems, current technologies, and procedures in such areas as organization, direction and management of people.
* Extensive knowledge of insurance industry concepts, practices and procedures.

Skills:
* Ability to foster, encourage and develop a team work environment to accomplish team goals with respect for individual team members.
* Ability to coach and develop team participation in goal setting, job enrichment, decision making, and work standards.
* Decision making skills for problem identification and selection of alternative solutions.
* Oral and written communication skills necessary for customer contact, negotiation, presentations, project management personnel management, technical and non-technical contacts.

Working   Conditions/Physical   Requirements:   Office environment with limited travel.

Plaintiff's Evidentiary Materials in Opposition to the Defendant's

Motion for Summary Judgment (hereinafter "Plaintiff's Evidentiary

Submission"), Tab 3.

Plaintiff submitted an application for the Claims Manager

position, which would have been a promotion for her.  Plaintiff's

application, however, contained only her name, address, phone

number, race, sex, education, job title, salary band, and whether she was willing to relocate; it did not contain any other information relating to her experience or ability to fill the position.   Defendant sent Plaintiff an acknowledgment that her application had been received, but it directed her not to submit her portfolio at that time.   Indeed, Defendant never requested Plaintiff to send her resume or portfolio, nor did Defendant interview Plaintiff for the job.

In December 2000, Plaintiff, who was then 46 years old, learned that Defendant was awarding the Claims Manager position to Ryan Pirozzi, a 28 year-old white male who had up to that time been working for Defendant in Greenville, North Carolina. Prior to his hire by Defendant in March 1998, Pirozzi had been employed as a probation officer for about three years, upon receiving a degree in sociology from the University of North Carolina Greensboro in 1994. Pirozzi initially worked for Defendant as a Casualty Representative, and while in that position he received an overall rating of "exceeds expectations" on his 1998 and 1999 performance evaluations.  He was also recognized as "Adjuster of the Month" six times, "Quarterly Adjuster" on two occasions, and 1999 "Adjuster of the Year" for the Greenville District.   Additionally, Pirozzi served as District Chair of the United Way Campaign.  Based on his work performance, Pirozzi was promoted to Master Claims

Representative/Case Management Analyst in January 2000, where he dealt exclusively with "high exposure" cases.

Before being promoted to the Claims Manager position in Birmingham, Pirozzi had been a finalist for another Claims Manager job in Georgia that had become available in October or November 2000. Pirozzi testified that he was encouraged to apply for that position by Al Mauceri, Defendant's Associate Claims Director who had also been Pirozzi's immediate supervisor for about the first six months of his employment with Defendant. Pirozzi testified that after applying for the Georgia position, he interviewed separately with Mauceri (white[3] male, DOB 8/24/69), Casualty Claims Director Cheryl Latch-Fahnestock (white female, DOB 3/31/46), and State Operations Director Beverly Adams (white female, DOB 9/26/47). During those interviews, Mauceri, Latch-Fahnestock, and Adams each mentioned to Pirozzi that the Claims Manager position in Birmingham was available and asked him whether he would be interested in it. Pirozzi told them at that time that he was not.

Subsequently, Pirozzi was advised that Defendant had selected

---

[3]There seems to be some confusion with regard to Mauceri's race or national origin. Defendant suggests that he is "Hispanic." See Defendant's Brief in Support of Motion for Summary Judgment (hereinafter "Defendant's Brief") at 5. However, Plaintiff said that she was not exactly sure whether he might be Hispanic or perhaps "Italian," but she perceived him to be a "white-skinned male." See Plaintiff's Depo., Defendant's Evidentiary Submission, Tab 1, at 107-08. This perception that Mauceri is "white" was shared by Pirozzi as well. Pirozzi Depo., Plaintiff's Evidentiary Submission, Tab 2, at 36. Viewing the record in the light most favorable to Plaintiff, the Court will assume that Mauceri is white, the same race as Pirozzi.

another employee for the Georgia position.   Pirozzi testified, however, that in the following weeks Mauceri began "continually approaching" him in an attempt to "recruit" him for the Birmingham Claims Manager job.   Pirozzi Depo. at 37-38.   Pirozzi eventually agreed to consider the position, and he submitted an application and a resume.   One weekend thereafter, he flew to Birmingham where Mauceri showed him around the city and "basically offered the job" to him.   Id. at 37-39.   The record indicates that although Pirozzi had been interviewed several weeks earlier in connection with the Georgia Claims Manager vacancy, Defendant did not otherwise interview Plaintiff or any of the other applicants[4] for the Birmingham Claims Manager position before Defendant ultimately awarded it to Pirozzi.

On February 2, 2001, about two months after Pirozzi was promoted to the Birmingham Claims Manager position, Defendant terminated his employment.   Subsequently, Defendant again posted the position as available.   Plaintif submitted another application, and this time, she, along with several other applicants, was granted an interview.   Ultimately, however, Plaintiff was rejected

---

[4]Besides Plaintiff and Pirozzi, four other individuals submitted applications for the Birmingham Claims Manager job that became available in November 2000. They were: Jeff Downs (white male, DOB 12/24/67), Amy Foster (white female, DOB 3/21/72), Antonio Grayson (an external applicant whose race and DOB are unknown), and Todd Warrick (white male, DOB 8/19/65).

for the position in favor of Thomas Drewry, a 31 year-old white male.

### III. ANALYSIS

In her sole remaining claims, Plaintiff asserts that Defendant intentionally discriminated against her because of race, sex, and/or age, in violation of Title VII, Section 1981, and/or the ADEA, by failing to promote her to the Claims Manager position awarded to Pirozzi in late 2000.[5] Both Title VII and Section 1981 make it unlawful for an employer to deny a promotion to its employee because of race. See, e.g., Sledge v. Goodyear Dunlop Tires North America, Ltd., 275 F.3d 1014, 1015 & n.1 (11th Cir. 2001). Title VII also protects against such employment discrimination because of sex. See, e.g., Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000). And finally, the ADEA similarly prohibits an employer from failing to promote an employee between 40 and 70 years old because of age. See, e.g., Stamey v. Southern Bell Tel. & Tel. Co., 859 F.2d 855 (11th Cir. 1988). Defendant

_____

[5]In her now-governing second amended complaint, filed March 19, 2002 (Doc. 19), Plaintiff asserts that she was subjected to a variety of adverse employment actions because of race, sex, and age discrimination and in retaliation for complaining about such discrimination. However, Plaintiff has filed, and the Court has granted, an unopposed motion seeking to formally dismiss with prejudice all of her retaliation claims and all of her discrimination claims except those relating to the Birmingham Claims Manager job awarded to Pirozzi. See Doc's 32 & 33. Indeed, in her brief responding to Defendant's motion for summary judgment, Plaintiff had essentially already abandoned all but the discrimination claims relating to her non-selection for that particular vacancy. See Plaintiff's Brief at 5 n.1.

argues that it is entitled to summary judgment on all such claims.

The parties acknowledge that Plaintiff attempts to prove her race, sex, and age discrimination claims regarding the 2000 promotion by using circumstantial evidence.  Thus, the burden-shifting framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981), is applicable to her claims.  Under that analysis, a plaintiff must first establish a prima facie case, which creates a presumption of discrimination.  The employer must then produce sufficient evidence to indicate that it took the employment action in question for one or more legitimate, nondiscriminatory reasons.  If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are merely a pretext for unlawful discrimination.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802-05; <u>Burdine</u>, 450 U.S. at 252-256.  Although this framework was originally developed in the context of Title VII claims, it also applies to claims brought pursuant to Section 1981,[6] <u>Sledge</u>, 275

---

[6]Moreover, Title VII and Section 1981 also both have the same substantive proof requirements for claims alleging intentional employment discrimination based on race.  <u>See</u> <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1314 n.6 (11th Cir. 2000); <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).  Thus, the Court addresses Plaintiff's Title VII race discrimination claim with the understanding that the analysis applies with equal force to her Section 1981 claim.

F.3d at 1015 n.1, and to claims brought pursuant to the ADEA. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 n.6 (11th Cir. 2001).

### A. Prima Facie Case

Defendant recognizes that Plaintiff might establish prima facie cases of race, sex, and age discrimination by presenting evidence of the following: (1) that she is a black woman between the ages of 40 and 70; (2) that she applied and was qualified for a job for which Defendant was seeking applicants; (3) that she was rejected; and (4) that Defendant selected a white male who is "substantially younger" than Plaintiff. See McDonnell Douglas, 411 U.S. at 802; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Walker v. Mortham, 158 F.3d 1177, 1192 (11th Cir. 1998). Defendant concedes that Plaintiff might prove all of the foregoing with the exception of that she was qualified for the Claims Manager position, as required by the second element above.  More specifically, Defendant alleges that Plaintiff had only "average or marginal work performance" and that she was not a "top performer" and "did not meet many of the production goals for claims representatives," precluding her from proving that she was qualified for the position in question.  The Court disagrees.

"The role of the qualification prong is simply to help 'eliminate[ ] the most common nondiscriminatory reasons for the plaintiff's rejection.'" Gregory v. Daly, 243 F.3d 687, 696 (2nd

Cir. 2001) (quoting <u>Burdine</u>, 450 U.S. at 254).  Accordingly, "the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that she 'possesses the basic skills necessary for performance of [the] job.'"  <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 92 (2nd Cir. 2001) (quoting <u>Owens v. New York City Housing Auth.</u>, 934 F.2d 405, 409 (2nd Cir. 1991) (internal quotation marks omitted)).  In other words, a plaintiff need only show that she met the minimum qualifications to be considered eligible for the job, not that she possessed all of the qualifications or qualities that an employer might prefer, but not absolutely require, a candidate to have.  <u>Miller v. Bed, Bath & Beyond, Inc.</u>, 185 F. Supp. 2d 1253, 1267 n.12 (N.D. Ala. 2002).

The evidence is sufficient in this case to allow a reasonable finding that Plaintiff possessed at least the minimum qualifications required for the available Birmingham Claims Manager job when she applied for it in November 2000.  While Defendant emphasizes Plaintiff's average overall work performance, Defendant has failed to establish that such actual or perceived level of performance in Plaintiff's current position actually disqualified her from being eligible to hold the job in question.  First, Defendant ignores that its own posting for the Claims Manager position lists various "Job Requirements," none of which state or

clearly imply that employees who are not "top performers" or who are generally deemed merely to "meet" the employer's expectations in their present role, rather than "exceeding" them, would not be considered eligible.   And second, the record suggests that Defendant itself found Plaintiff to be at least minimally qualified for the very same position when it became available in February 2001 after Pirozzi's termination.  At that time, Plaintiff applied and, unlike some applicants, was granted an interview, circumstances which unto themselves tend to indicate that Defendant considered her qualified for the position on at least some level. Cf. Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 440 (11th Cir. 1996) ("[B]ecause the decisionmakers . . . were familiar with [the plaintiff's] performance in his work . . ., we can infer from the fact that he was granted an interview that [the plaintiff] was at least at some level qualified for the new job"), disapproval on other grounds recognized in Arrington v. Cobb County, 139 F.3d 865, 875 n.21(11th Cir. 1998); Maddox v. Claytor, 764 F.2d 1539, 1547 (11th Cir. 1985) ("Given the district court's finding that only highly qualified and qualified applicants were ever eligible for interviews under the [employer's] promotion system, the fact that [the plaintiff] was interviewed indicates he at least met the qualification criteria"); Baker v. Georgia Power Co., 1981 WL 375, *3 (N.D. Ga. 1981) (holding that, for purposes of

establishing a prima facie case, the plaintiff was "presumptively qualified" for the positions she sought "because the company's personnel office thought she was sufficiently qualified to interview for the positions"). Also, according to Chad Emmerich, Defendant's Birmingham Human Resources Manager, Plaintiff was ultimately rejected for the Claims Manager position in February 2001 because the decisionmakers found her to be "not the most qualified candidate." Emmerich Affidavit ¶ 11 (emphasis added). That statement suggests that Defendant deemed Plaintiff to be among the candidates it considered "qualified" for the Birmingham Claims Manager job in February 2001. Defendant has not attempted to explain why the passage of about two or three months rendered Plaintiff a substantially different candidate from when she applied for the same exact post in November 2000. Therefore, the Court concludes that Defendant has failed to show that Plaintiff cannot establish that she was qualified for an available position for which she applied. Defendant is not entitled to summary judgment on the ground that Plaintiff cannot make out a prima facie case.

### B. Employer's Rebuttal

Once the employee has set forth evidence constituting a prima facie case, the burden then shifts to the employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves,

530 U.S. at 142 (quoting <u>Burdine</u>, 450 U.S. at 254).   "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" <u>Id.</u> (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509 (1993)).   That is, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.   It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting <u>Burdine</u>, 450 U.S. at 254-55).

To carry its burden, Defendant relies upon Emmerich's affidavit.[7]   Emmerich (white male, DOB 10/23/70) worked in

_____

[7]Plaintiff has moved to strike Emmerich's affidavit, "in whole or in part." Doc. 29. However, she has presented arguments contesting the admissibility only with regard to all or most of paragraph three and one sentence in paragraph four of the affidavit, on the ground that the statements in question are not within Emmerich's personal knowledge, as required by Federal Rule of Civil Procedure 56(e). "The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." Lee v. National Life Assur. Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980). Therefore, even if all of Plaintiff's objections pertaining to the statements in paragraphs three and four of Emmerich's affidavit are meritorious, such does not warrant exclusion of the affidavit "in whole." So to the extent that Plaintiff's motion to strike Emmerich's affidavit seeks such relief, it is due to be denied.

Plaintiff claims that the "portion of . . . paragraph [three of Emmerich's affidavit] concerning Mr. Pirozzi's interview and qualifications/awards is not based on Mr. Emmerich's personal knowledge because by his own admission, he did not participate in the interview in question." Motion to Strike Emmerich's Affidavit at 3-4. Plaintiff also claims that the sentence in paragraph four, that "Ms. Latch-Fahnestock, Ms. Adams and Mr. Mauceri had worked with [Plaintiff] and observed that [she] was not a top performer and did not meet many of the production goals for claims representatives," should be stricken because "it is not based on the affiant's personal observations, but rather on the observations of others." Id. at 4. However, because the Court concludes that Defendant is entitled to summary judgment regardless of whether the allegedly objectionable statements from paragraphs three and four are considered,

Defendant's Birmingham office with Plaintiff from June 1996 to January 2002. Emmerich Aff. ¶ 2. He asserts that Plaintiff "was not interviewed or selected for the [Birmingham Claims Manager] job based on her prior average or marginal work performance." <u>Id.</u> ¶ 4.[8] Emmerich further claims that he, along with Field Claims Officer Paul Warlick (white male, DOB 11/01/40), Mauceri, Adams, and Latch-Fahnestock, participated in the decision to select Pirozzi for the Claims Manager job in question and that they did so because they "believed that Mr. Pirozzi was the best qualified candidate based on his successful work performance, credentials, self-development activities, and ability to master job skills quickly." <u>Id.</u> ¶ 5.[9] Finally, Emmerich asserts that although Pirozzi had "less than the preferred years of experience, the manner in which he excelled on his former jobs met [the decisionmakers'] expectations." <u>Id.</u>

Plaintiff urges that <u>IMPACT v. Firestone</u>, 893 F.2d 1189 (11th Cir. 1990), requires the Court to rule that Defendant has not

---

the Court shall deny as moot Plaintiff's motion to strike Emmerich's affidavit "in part."

[8]Plaintiff has not objected to this statement in paragraph four of Emmerich's affidavit, regarding why Plaintiff allegedly was not interviewed or selected for the Claims Manager position in November 2000. Therefore, the statement will be considered by the Court in resolving Defendant's motion for summary judgment. <u>Lee</u>, <u>supra</u>.

[9]Because Plaintiff has not argued that any of the statements in paragraph five of Emmerich's affidavit are not based upon personal knowledge or are otherwise inadmissible, the Court will consider such statements in ruling on Defendant's motion for summary judgment. <u>Lee</u>, <u>supra</u>.

satisfied its burden at the intermediate stage of the McDonnell
Douglas analysis.   In IMPACT, numerous black plaintiffs brought
claims alleging racial discrimination in hiring and promotions by
the State of Florida.   Id. at 1190.   The employer attempted to
satisfy its burden to articulate a legitimate reason for the
various employment decisions challenged by the plaintiffs by
pointing to personnel records of the plaintiffs and many of the
successful applicants that had been introduced into evidence, along
with testimony from the employer's personnel director who asserted
that it was the employer's "general practice" to select the "most
qualified" person for job openings.   893 F.3d at 1191-92.   In
reversing the judgment below for the employer, the Eleventh Circuit
held that the employer's evidence was insufficient to meet its
intermediate burden under the standards set forth in Burdine.   Id.
at 1192-95 & n.5. More specifically, the court recognized that, in
order for the employer's burden to be met, "there must be 'evidence
that asserted reasons for discharge were actually relied on." Id.
at 1194 (quoting Lee v. Russell County Bd. of Ed., 684 F.2d 769,
775 (11th Cir. 1982)).   And because the personnel director had
testified only regarding the employer's general policy, his
testimony did not purport to set forth the basis for any actual
employment decision involving the plaintiffs and was thus
insufficient to meet the employer's burden.   Id. at 1193-94.   The

court further explained that in the absence of evidence indicating that the employer actually relied upon lawful reasons in making the specific employment decisions at issue, it was not enough for the employer merely to introduce evidence of its general policy and the applicants' records so that the factfinder might then decide which applicant was better qualified.   <u>Id.</u>   Plaintiff contends that Defendant in the case <u>sub judice</u> has similarly failed to offer sufficient evidence to indicate that Defendant actually relied upon the applicants' relative qualifications when rejecting Plaintiff in favor of Pirozzi.

The Court finds that Plaintiff's reliance on <u>IMPACT</u> is misplaced, as that case is distinguishable.   In contrast to the personnel director in <u>IMPACT</u>, Emmerich participated in the decisionmaking process that resulted in Pirozzi's selection for the position in question.   Further, Emmerich has not testified merely about his employer's general policies or practices regarding the criteria that are supposed to be used in judging candidates to fill job openings, leaving it to the factfinder to speculate that those general policies were, in fact, followed in this specific case. Rather, he directly states reasons why Defendant allegedly did not select Plaintiff for the Claims Manager position in Birmingham that became available in November 2000 and why Defendant allegedly chose Pirozzi for that vacancy.   Thus, Emmerich's testimony sufficiently

suggests that Defendant actually relied upon legitimate, nondiscriminatory reasons when making the employment decision Plaintiff now disputes, as required by IMPACT.

Plaintiff also argues more broadly that Defendant's proffered explanation is insufficient to carry the employer's burden at this stage because, while Defendant claims that it weighed the comparative qualifications of Pirozzi and the other applicants, the record suggests, according to Plaintiff, that Defendant simply recruited Pirozzi and never even considered Plaintiff or any of the other applicants.  See Plaintiff's Brief at 10-12.  However, even assuming that Plaintiff is correct that such evidence is present in the record, this line of argument simply is immaterial to the inquiry at the second stage of the McDonnell Douglas analysis, i.e., whether Defendant has offered evidence that, if credited by the trier of fact, is sufficient to support a finding that Defendant took the challenged employment action for a legitimate reason.  Indeed, this argument, that other evidence in the record undercuts Defendant's claim that it relied upon the applicants' relative qualifications, presupposes that Defendant has already offered the applicants' relative qualifications as a legitimate basis for its employment decision.  As such, this argument is more appropriately addressed at the final stage of the McDonnell Douglas framework, in which the plaintiff is afforded an opportunity to

show that the employer's offered explanation is unworthy of belief
and is thus likely merely a pretext for unlawful discrimination.
The Court concludes that Defendant has satisfied its burden to
present evidence reasonably indicating that it took the challenged
employment action for one or more lawful reasons.

   **C.  Pretext**

   At the third and final stage of the <u>McDonnell Douglas/Burdine</u>
analysis, Plaintiff must create a genuine issue of material fact as
to whether the reasons advanced by Defendant are merely a pretext
for unlawful race, sex, or age discrimination.  <u>Bogle v. Orange
County Bd. of County Com'rs</u>, 162 F.3d 653, 658 (11th Cir. 1998).
In other words, Plaintiff must point to sufficient evidence to
allow a fact finder reasonably to conclude, at a minimum, that the
proffered reasons were not actually the motivation for her non-
selection.  <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024-25
(11th Cir. 2000) (en banc); <u>Combs v. Plantation Patterns</u>, 106 F.3d
1519, 1538 (11th Cir. 1997).  Plaintiff may do this (1) by showing
that the legitimate nondiscriminatory reasons should not be
believed or (2) by showing that, in light of all of the evidence,
discriminatory reasons more likely motivated the decision than the
proffered reasons.  <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371,
1376 (11th Cir. 1996).  <u>See also</u> <u>Reeves v. Sanderson Plumbing
Products, Inc.</u>, 530 U.S. 133, 148 (2000) (holding that "a

plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but cautioning that such a showing may not always be adequate to sustain a finding of unlawful discrimination).  In order to avoid summary judgment, a plaintiff generally "must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual."  Chapman, 229 F.3d at 1037.

Plaintiff argues that Defendant's claims that it considered and rejected her for the position because of her "average or marginal prior work performance" and that Pirozzi was selected instead because he was found to be "best qualified" among the candidates are unworthy of belief.  More specifically, Plaintiff first asserts that these explanations imply that Defendant considered the comparative or relative qualifications of the applicants, while the record indicates, according to Plaintiff, that Pirozzi was the only candidate Defendant ever even considered for the position, to the exclusion of Plaintiff and all others.  In support of this position, Plaintiff points to two pieces of evidence:  (1)  Pirozzi's testimony recalling that Mauceri "continually approached" and "tried to recruit" him to take the Birmingham Claims Manager job, despite Pirozzi's initial

indications that he was not interested in it, and (2) Plaintiff's own testimony that, although she submitted an application for the position in question, she was never interviewed nor asked for her resume or other materials providing details of her experience and qualifications.  <u>See</u> Plaintiff's Brief at  10-12.

The Court acknowledges that the evidence is sufficient to indicate that Pirozzi may have been the only candidate to which Defendant gave any serious consideration for the Birmingham Claims Manager position in November 2000.  It appears that Al Mauceri likely played a significant role in the decision to pick Pirozzi, and Mauceri vigorously pursued him in an attempt to convince him to take the Birmingham position.  Moreover, it is undisputed that besides Pirozzi's interview in connection with the Claims Manager position in Georgia, Defendant did not otherwise interview any of the other applicants for the Birmingham position before awarding it to Pirozzi, although several applicants were interviewed for the same job when it again became vacant in February 2001.  However, even if Defendant did not give any kind of serious consideration to anyone besides Pirozzi, the Court notes that such would not necessarily be unlawful.  Handpicking employees may not be an exemplary management philosophy, but as long as the picking is not done based on race, sex, age or some other protected characteristic, it does not violate federal anti-discrimination

law.  See <u>Hawkins v. Astor Home for Children</u>, 1998 WL 142134, *9
(S.D.N.Y. 1998); <u>see also generally</u> <u>Chapman</u>, 229 F.3d at 1030
(federal courts "do not . . . second-guess the business judgment of
employers" (quoting <u>Combs</u>, 106 F.3d at 1543)).   Thus, Plaintiff
still  must  show  that  she  was  rejected,  or  that  Pirozzi  was
preferred, because of race, sex, or age.

Furthermore, the record does not support Plaintiff's assertion
that  Defendant  gave  absolutely  <u>no</u>  consideration  whatsoever  to
Plaintiff or any other candidate besides Pirozzi.  It is undisputed
that Defendant sent a memo to Plaintiff acknowledging receipt of
her application for the position, and Emmerich's testimony suggests
that  Defendant  did  "consider,"  Plaintiff,  albeit  perhaps  only
briefly,  in  rejecting  her  as  a  viable  candidate  compared  to
Pirozzi.   Defendant's failure to interview Plaintiff or request
that  she  furnish  more  detailed  information  regarding  her
qualifications, standing alone, is not enough from which reasonably
to infer that Defendant did not consider her at all for the job.
This is particularly so given that Latch-Fahnstock, Adams, Mauceri,
and Emmerich, four of the people involved in the decisionmaking
process regarding the November 2000 vacancy, had all worked with
Plaintiff  at  one  time  or  another  and  were  therefore  at  least
somewhat familiar with her work, which could obviate the need to
obtain additional information from her.

Next, Plaintiff contends that the fact that she was interviewed for the Claims Manager job opening in February 2001 demonstrates that Defendant "believed her to be qualified [for the position] and did not find a problem with her performance," Plaintiff's Brief at 16, thus undercutting Defendant's explanation that she was rejected for the November 2000 vacancy because of her "prior average or marginal work performance." As the Court has previously explained, it agrees that Defendant's interviewing of Plaintiff for the February 2001 vacancy, coupled with Defendant's proffer that it rejected her at that time because she was not the "most qualified" candidate, suggests that Plaintiff was at least minimally qualified for the Claims Manager job.  However, this evidence just cannot stretch as far as Plaintiff would have it. Plaintiff offers no evidence tending to suggest that the relevant decisionmakers for Defendant did not honestly perceive her prior work performance in her current position to be merely "marginal or average," which is a reasonable description of her yearly performance evaluations.  Even if Plaintiff's performance was enough for her to be considered eligible, minimally qualified, and even meriting an interview for the Claims Manager opening does not imply that Defendant is giving a dishonest account of its behavior when it alleges that it decided that such work performance ultimately was not deserving of a promotion.  Indeed, Plaintiff was

again denied the promotion after being interviewed in February 2001, and she does not dispute at this point in these proceedings that her non-selection on that occasion was the result of unlawful discrimination. Thus, Plaintiff's subsequent interview offer constitutes only the weakest of evidence on the pretext issue.

Finally, Plaintiff attempts to discredit Defendant's explanation by pointing to evidence that she was more qualified than Pirozzi. Specifically, she points to evidence indicating (1) that she had over a decade more experience in the insurance industry than Pirozzi; (2) that she had some supervisory experience whereas Pirozzi did not; and (3) that she was more familiar with the insurance and tort law of Alabama than was Pirozzi, who had previously worked exclusively in North Carolina.

A plaintiff who seeks to establish that an employer's proffered reason that it selected the employee it found most qualified is merely a pretext for unlawful discrimination cannot succeed in doing so simply by showing that she is more qualified than the successful applicant. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). Rather, the plaintiff "must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" Id. (quoting Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001)). Furthermore, the Eleventh Circuit has explained as

follows:

> A plaintiff is not allowed to recast an employer's
> nondiscriminatory reasons or substitute his business
> judgment for that of the employer.  Provided that the
> proffered reason is one that might motivate a reasonable
> employer, an employee must meet that reason head on and
> rebut it, and the employee cannot succeed by simply
> quarreling with the wisdom of that reason.

<u>Chapman</u>, 229 F.3d at 1030.

Here, it is true that Defendant claims generally that it selected Pirozzi for the Claims Manager position because it considered him to be the "most qualified" candidate.  However, Defendant has not suggested that it found him to be so qualified based upon either the amount of his experience in the industry; the amount of his supervisory experience; or the degree to which he was familiar with Alabama law.  Rather, Defendant has indicated that it was Pirozzi's "successful work performance, credentials, self-development activities, . . . his ability to master job skills quickly," and "the manner in which he excelled on his former jobs" that led to his being deemed "most qualified."  Plaintiff has not sought to dispute that she was superior to Pirozzi in any of these particular areas.  Indeed, an examination of the glowing evaluations and numerous awards Pirozzi received while working in North Carolina prior to his promotion to the Claims Manager job fully support that, despite his relative inexperience, Defendant viewed him as an outstanding performer, while Plaintiff's personnel

file shows she was generally rated as being a sound and satisfactory employee, but not anything more. Plaintiff's instant pretext argument emphasizing her superior experience and familiarity with Alabama law amounts simply to an improper attempt to recast Defendant's legitimate reasons and appears to quarrel with Defendant's reasons for preferring Pirozzi.

The Court concludes that Plaintiff has failed to produce sufficient evidence of pretext. Accordingly, Defendant is entitled to summary judgment.

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's motion for summary judgment (Doc. 25) is due to be **GRANTED**. Considering the record and the arguments of counsel, the Court has determined that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Plaintiff's motion to strike the affidavit of Jeffrey Robertson (Doc. 28) is due to be **DENIED AS MOOT**, while Plaintiff's motion to strike the affidavit of Chad Emmerich (Doc. 29) shall be **DENIED IN PART AND DENIED AS MOOT IN PART**. A separate order shall be entered.

**IT IS SO ORDERED**, this _26th_ day of June, 2002.


H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE